## GEORGE WRIGHT
### *v.*
## RUSH ENGLISH.

1. NEW TRIAL—*verdict contrary to evidence.* As a general rule the Supreme Court will hesitate to set aside a verdict merely because it seems to be unsupported by the evidence; but where a verdict seems to be manifestly against evidence, it is the duty of the Supreme Court to reverse the judgment and have the facts passed upon by another jury.

APPEAL from the Circuit Court of Greene county; the Hon. D. M. WOODSON, Judge, presiding.

This action was originally brought before a justice of the peace in said county, to recover the value of a United States treasury note, of the denomination of one hundred dollars.

In the spring of 1864, Rush English, a boy, found such a note on the public square in Carrollton. It was at once claimed and taken from him by George Wright, who was then passing. Soon after, English, by his next friend, brought suit before a justice against Wright for the value of the note; there was a trial by the justice alone, and a judgment for the plaintiff. The defendant appealed, and in April, 1865, the cause was tried in the Circuit Court, and the jury found a verdict for the plaintiff for one hundred dollars. Judgment was rendered on the verdict and the then defendant brings the case to this court on appeal. The substance of the testimony at the last trial is as follows:

*W. A. Davis:* About a year ago I was in the public square in Carrollton, searching among papers which had been thrown out of my store; Rush English and other boys were with me, all looking for uncanceled notes, when English suddenly exclaimed "I have found a greenback!" and handed a one hundred dollar interest bearing United States treasury note of the value of one hundred dollars; just as I was handing the bill back to English, George Wright reached past me, took the bill from English and walked rapidly toward his store;

first saw Wright as he was reaching to take the bill; half an hour before this Wright had passed some thirty feet north of us going toward the bank; we moved three or four feet south before the bill was found; during all that time there was a constant wind from the south, so strong that it blew papers much larger and heavier than the bill over a two-story house fifty feet north of us; there was nothing to obstruct the wind blowing from the south to the north; I never heard of any other person claiming to have lost a hundred dollar bill there except Wright.

*W. Straight:* I saw Wright come out of the bank and go toward Davis and the boys; I was about eighty feet from the boys; the course of Wright was almost a straight line from me to them; I heard English say he had found a greenback, and Wright was then some thirty or forty feet from English; he seemed to pass a step or two beyond English and then turned, snatched the bill and walked on toward his store; the wind was then very strong and constant from the south, and carried papers much larger than the bill as high as the trees and over the houses more than a hundred yards north of where English was; there was nothing there to change the wind from blowing as stated; I never heard of any other person then claiming to have lost a hundred dollar bill but Wright.

The defendant then called his witnesses.

*R. Pierson:* I was a clerk in the bank; Mr. George Wright came into the bank to deposit money the morning the bill was found; among his money was a one hundred dollar interest bearing treasury note; this he did not deposit, and left the bank with that bill in his hand; we calculated the interest then due and I know the bill was dated in February, 1864; bills of that description were then rare in that part of the country; never heard of any other person except Wright claiming to have lost such a bill.

*O. Pierson:* I was a partner with George Wright in mercantile business when the bill was found; Wright kept his cash account separate from the partnership account, but I was familiar with his money matters; some weeks before the loss

Wright exhibited an interest bearing bill, which I noticed particularly; on it was a small patch; it was the only bill of the kind in the concern, and it belonged to Wright; on the same day of the loss, after the affair was over, Wright again showed the bill to me; it was the same bill he had before; that day English came into the store and said to Wright he thought Wright ought to give him something for finding the bill; Wright said it had not been lost; English seemed dissatisfied, and went away; five or six hours afterward English returned and demanded the bill; never heard any other person but Wright claim to have lost such a bill.

This was all the evidence.

The following was agreed to be a correct plat of the locality:

Mr. JAMES W. ENGLISH, for the appellant.

Mr. ALBERT G. BURR, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

As a general rule an appellate court acts with hesitation in setting aside the verdict of a jury, unless it is apparent that it is not supported by the evidence. Seeing the witnesses testify, the jury have opportunities of determining the weight due to evidence, that can never be enjoyed by an examination of evidence after it is reduced to writing. Again, however carefully it may be transcribed, it is never precisely the same as it appears at the time when it is given. And, inasmuch as the judge who tries the case sees the witnesses, he can judge from their manner, their intelligence, their means of information and their bias, if they should have any, whether the evidence sustains the finding of the jury. But when a verdict seems to be manifestly against evidence, it is the duty of this court to reverse the judgment, and have the facts again passed upon by another jury.

In this case the only question presented is, whether the jury have arrived at an erroneous conclusion in finding the facts presented by the issues. Davis testifies that while he and the boys, one of whom was appellee, were collecting the scattered papers, appellant passed about thirty feet north of them, and went into the bank. That at that time, there was a strong wind blowing from the south; strong enough to blow papers a considerable distance. It is therefore perfectly obvious that appellant could not have dropped this bill in going to the bank. And Davis is fully sustained in his evidence as to the direction and force of the wind by the testimony of Straight.

This latter witness also testifies that appellant was thirty or forty feet from appellee, when he heard him say that he had found the note. As we understand the evidence, appellant was then returning from the bank, which was situated south of west from the point where appellee picked up the note. And appellant, we infer, was approaching Davis and the boys in a direct line from the bank. It also appears, that Davis and the boys were on the north side of the public square, about opposite to the center of a street leading from the west to the north side

of the public square, and that the bank was on the north-east corner of the block lying west of the square. If, then, the wind was slightly from the south-west, it is apparent that a strong current would enter the square from the west, by this street, which would greatly modify the current from the south, and would naturally, in carrying the bill the distance of thirty feet, incline its direction to the north-east, and very probably about to the place where appellee was standing at the time. Whilst this is by no means certain, we think it is more than probable.

Appellant proved that he had recently, before the occurrence, owned such a bill. The bank clerk also swears that but a few minutes before appellee picked up the note appellant had one of the same denomination, and dated in the same month, as the bill in controversy, which appellant was proposing to deposit, and which he examined at the time in reference to the interest then due; that appellant left the bank, with it in his hand, when he started back to his place of business. And the witnesses all concur in saying that they had heard of no person losing such a bill in that vicinity. If such a thing had occurred it is hardly probable that none of these witnesses would have heard of it. Again, appellee soon afterward went to appellant and claimed compensation for finding the note, when appellant denied that it had been lost. By this claim appellee recognized the ownership of the note as being in appellant, which, while it is by no means conclusive, is a circumstance lending weight to the other facts tending to prove appellant's ownership.

It is true that, although appellee was not the owner, and was only entitled to hold the note as against all persons but the true owner, and appellant was bound to prove title before he could recover, still he was only bound to prove it by a preponderance of all the evidence. And we think he did so on the trial below, and that the case should be submitted to another jury, and that the circuit judge erred in overruling the motion for a new trial. The judgment of the court below is reversed, and the cause remanded.

*Judgment reversed.*